UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>Blakney, et al<br>Re: INDIA GRAVES,<br>　　　　　　　　　Defendant | CR Nº: 1:06-cr-00021-RBW-4 |

**MOTION TO EXCLUDE COOPERATING WITNESS TESTIMONY
AND REQUEST FOR A RELIABILITY HEARING**

India Graves, by and through her attorney, respectfully moves, pursuant to Federal Rules of Evidence 104, 403, and 701, to exclude the testimony of cooperating witnesses, because their testimony is unreliable and its probative value is substantially outweighed by the danger of unfair prejudice. Ms. Graves further requests that the Court hold a pre-trial hearing to determine the reliability of these witnesses. "It is difficult to imagine a greater motivation to lie than the inducement of a reduced sentence . . . ." *United States v. Cewantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987). In this case, the government's case for Ms. Graves' guilt will be based primarily on the testimony of compensated, interested, biased witnesses, whose own eventual freedom depends on their ability to obtain her conviction. Under the circumstances, their reliability is so compromised that their testimony lacks probative value, thereby failing the test of Federal Rule of Evidence 403. The Fourth and Ninth Circuits have called for increased judicial scrutiny of compensated informant witnesses, and several courts have mandated pre-trial reliability hearings to permit courts to evaluate the reliability of compensated witnesses such as the cooperators in this case. Ms. Graves thus requests that the Court hold a reliability hearing to require the government to establish the reliability of its cooperating witnesses, to exclude some or all of those witnesses if the Court deems it

appropriate, and to preserve Ms. Graves's right to a fair trial. In support of this request, Ms. Graves would state:

1. Ms. Graves has been charged by indictment with conspiracy to distribute and possess with intent to distribute heroin, PCP, cannabis, cocaine and cocaine base.

2. In addition to Ms. Graves and the six co defendants with whom she will proceed to trial, other defendants were charged related to this matter who apparently have cooperation deals with the government and will be testifying for the government at trial.

3. In exchange for having incriminated Ms. Graves and others, the cooperators have all received compensation from the government in the form of charging and sentencing consideration. In particular, as a result of their admissions implicating Ms. Graves, some may have been released from prison and most face no mandatory time in prison. In view of the compensation that the cooperating witnesses have received (and may expect to receive) in exchange for implicating Ms. Graves, their testimony is biased and inherently unreliable.

4. Their testimony also will be extremely difficult to disprove because as to most of the crimes Ms. Graves is charged with, they are the only witnesses to the crime, and the police have recovered very little physical evidence.

5. Counsel would note that of an alleged conspiracy spanning at least four years and memorialized in an 115 count indictment, Ms. Graves is charged in 24 counts; however those counts can be consolidated into occurring on only four distinct days: March 3, 2004 (Count 7, firearm); January 21, 2006 (Counts 11, 12, 13, 18,19, 20, 21, PWID and firearms) ; and, December 31, 2005 (Counts 53, 54, 55, 56, 57, 58, 59, 60, 61, 63, 64, 66, 68, 69 and 71 ((telephone counts)).

These three days out of a possible 1460 (4 years) represent .020547 % of the total time period

alleged in the conspiracy time frame. Given this paucity of alleged participation, the government's case against Ms. Graves must, perforce, rely on cooperating witnesses.

6. For these reasons, Ms. Graves moves to exclude the testimony of the cooperating witnesses based on its unreliability, its lack of probative value, its prejudicial nature, and its imperviousness to cross-examination at trial.

## ARGUMENT

I.  **COURTS HAVE DEEMED COMPENSATED WITNESSES UNRELIABLE AND SUBJECT TO ADDITIONAL JUDICIAL SCRUTINY**

The Fourth Circuit has recently expressed its deep concern over the use of compensated informant testimony and its reluctance to admit such testimony absent stringent judicial controls. United States v. Leverzite, 277 F.3d 454, 459-62 (4th Cir. 2002). Compensated testimony "create[s] fertile fields from which truth-bending or even perjury could grow, threatening the core of a trial's legitimacy." Id. at 462. Such testimony "may be approved only rarely and under the highest scrutiny." Id. The Fourth Circuit has prescribed additional procedural guarantees that the government must adhere to where compensated informant witnesses are contemplated. Before such testimony will be permitted: (I) the compensation arrangement must be disclosed to the defendant, (2) the defendant must have the opportunity to cross-examine the witness, and (3) the jury must be instructed to engage in heightened scrutiny of the witness. Finally, where the compensation is: contingent on the content or nature of the testimony given, the court must ascertain (1) that the government has independent means, such as corroborating evidence, by which to measure the truthfulness of the witness's testimony and (2) that the contingency is expressly linked to the witness testifying truthfully. Moreover, when a witness is testifying under such a contingent payment arrangement, the

government has a duty to inform the court and opposing counsel when the witness' testimony is inconsistent with the government's expectation. *Levenite1*, 277 F.3d at 462-63. Similarly the Ninth Circuit has called for increased judicial scrutiny of deals between informants and the government, holding that "where the prosecution fails to disclose evidence such as the existence of a leniency deal or promise that would be valuable in impeaching a witness whose testimony is central to the prosecution's case, it violates the due process rights of the accused and undermines confidence in the outcome of the trial," *Horton v. Mayle*, 408 F.3d 570, 581 (9th Cir. 2005), and calling such lack of disclosure "unscrupulous." *Silva v. Brown*, 416 F.3d 980, 991 (9th Cir. 2005).

In this case, the cooperators are being compensated specifically for testimony adverse to Ms. Graves and others. They have already received the benefit of reduced charges .Their testimony is thus compensated, contingent testimony precisely of the sort that so troubled the Fourth Circuit in *Levenite*. The Court therefore has an obligation to ascertain whether the government can corroborate the cooperators' truthfulness, the nature of the contingency arrangement, and how the government intends to assure that the cooperators testify truthfully. Because of the difficulty ascertaining these matters in the heat of trial in the presence of the jury, a pre-trial reliability hearing is warranted.

## II. COMPENSATED WITNESSES ARE INHERENTLY UNRELIABLE

A growing literature documents the inherent unreliability of compensated witnesses, cooperating co-conspirators, "jailhouse snitches," and other types of informants. Numerous horror stories of wrongful convictions based on perjurious informant testimony have emerged, and they have prompted official review of the practice of permitting compensated informant[1] testimony. The

---

[1] While Levelzite concerned a witness who was testifying in exchange for money, the same concerns arise whether the compensation consists of money or reduced criminal sanctions. Indeed, the promise of a reduced sentence or the elimination of the capital sentencing option may

following list contains just a few of the efforts to document and control informant unreliability: (1) The founders of the Innocence Project discovered that twenty-one percent of the innocent defendants on death row were placed there by false informant testimony. Barry Shceck, Peter Neufeld & Jim Dwyer, Actual Innocence, 26-57 (Doubleday 2000); (2) The Illinois Governor's Commission on Capital Punishment unanimously concluded that "[t]estimony from in-custody witnesses has often been shown to have been false, and several of the thirteen cases of men released from death row involved, at least in part, testimony from an in-custody informant." The Commission recommended the holding of reliability hearings to mitigate the chances of perjury, Illinois Governor's Commission on Capital Punishment, Chapter 8 (April 2002); (3) Bedau and Radelet in their comprehensive historical study discovered that one-third of the 350 erroneous convictions they studies were due to "perjury by prosecution witnesses," twice as many as the next leading source -erroneous eyewitness identification -and stemming in large part from the prevalence of co-conspirator testimony.  Hugo Bedau & Michael Radelet, *Miscarriages of Justice in Potentially Capital Cases*, 40 Stan. L. Rev. 21, 173 (1987).

Courts likewise have recognized the inherent unreliability of compensated informants, going so far as to take judicial notice of their tendency to lie. "The use of informants to investigate and prosecute persons engaged in clandestine criminal activity is fraught with peril. This hazard is a matter 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned' and thus of which we can take judicial notice."  *United States v. Bemal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).

---

be far more valuable to a defendant than cash. See *Cewantes-Pacheco*, 826 F.2d at 315 (same analysis applies to informant compensation whether it be money or lenience).

"Our judicial history is speckled with cases where informants falsely pointed the finger of guilt at suspects and defendants, creating the risk of sending innocent persons to prison." Id. Another court has noted that "[n]ever has it been more true that a criminal charged with a serious crime understands that a fast and easy way out of trouble with the law is . . . to cut a deal at someone else's expense and to purchase leniency from the government by offering testimony in return for immunity, or in return for reduced incarceration." *Northern Marial Islands v. Bowie*, 243 F.3d 1109, 1123 (9th Cir. 2001). Indeed, long before snitching became a pervasive aspect of the criminal justice system, the Supreme Court recognized that "[t]he use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility." *Lee v. United States*, 343 U.S. 747, 755 (1952).

Where the unreliability of a particular type of witness is so well-established, it is appropriate for the court to take protective steps to guarantee the integrity of the process. *Daubert v. Merrell Dow Phamzaceuticals*, 509 U.S. 579, 595 (1993) (court to act as "gatekeeper" to ensure reliability of scientific evidence).

### III. CROSS EXAMINATION IS AN INSUFFICIENT GUARANTEE OF RELIABILITY IN THIS CASE

Despite the recognized unreliability of compensated informant witnesses, courts have traditionally permitted them to testify on the assumption that cross-examination will adequately test an informant's truthfulness. See, e.g., *Hoffa v. United States*, 385 U.S. 293, 3 1 1 (1 966). In *Hoffa*, the Supreme Court upheld the use of a compensated informant, holding that his testimony did not violate the defendant's right to due process, in large part because of the availability of cross-examination, reasoning that "[t]he established safeguards of the Anglo- American legal system leave the veracity

of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." Id. at 3 1 1 ; see also *Cervantes-Pacheco*, 826 F.2d at 3 15 (procedural protections of discovery, cross-examination, and jury instructions regarding informants satisfy due process). The cooperators' testimony in this case, however, will be nearly impossible for defense counsel to penetrate on cross-examination.

Cooperators are the only witnesses to the certain crimes, and their stories can neither be independently confirmed nor disproved. The assertion that Ms. Graves was even involved in certain alleged acts rests entirely upon the self-serving, unverifiable statements of the cooperating witnesses. Cross-examination will be further hampered because the defense lacks pre-trial access to the cooperators. At this stage in the proceedings, the defense has not yet seen the cooperators' pleas agreements. The cooperators, on the other hand, have had multiple opportunities to hone their version of events in preparation for court, both in the Superior Court proceedings and in connection with this federal case and other federal cases. This combination of one-sided access and government preparation will render these witnesses overly prepared and difficult to examine at trial. Finally, unlike uncharged lay witnesses, the cooperators have compelling incentives to pin responsibility on Ms. Graves. Their future literally hangs in the balance, based on their ability to maintain a consistent story. For all these reasons, in trial cross-examination may be insufficient to determine whether the cooperators are being truthful.

    Professor George Harris has analyzed the difficulty of cross-examining informants whose compensation depends on their usefulness to the prosecutor. As Professor Harris explains: Paradoxically, the more a witness's fate depends on the success of the prosecution, the more resistant the witness will be to cross-examination. A witness whose future depends on currying the

government's favor will formulate a consistent and credible story calculated to procure an agreement with the government and will adhere religiously at trial to her prior statement. George C. Harris, Testimony for Sale: The Law and Ethics of Snitches and Experts, 28 Pepp. L. Rev. 1, 54 (2000) In this case, the motivations of the cooperators are precisely those described by Professor Harris. Years of their lives literally depend on the success of this prosecution, and therefore they will be more resistant to cross-examination than the typical witness.

For these reasons, the Court should not rely on defense counsel's eventual cross-examination of these witnesses to establish their truthfulness, but rather should have the opportunity, unfettered by the rules of evidence and the presence of the jury, to determine for itself whether the testimony of these witnesses bears sufficient indicia of reliability to permit its presentation at trial.

## IV. THE GOVERNMENT HAS AN OBLIGATION TO ESTABLISH THE RELIABILITY OF ITS COOPERATING WITNESSES

The government has special obligations when it comes to their cooperating informants. Courts have established that a "prosecutor who does not appreciate the perils of using rewarded criminals as witnesses risks compromising the truth-seeking mission of our criminal justice system [and courts] expect prosecutors and investigators to take all reasonable measures to safeguard the system against treachery." *Commonwealth of the Northern Mariana Islands v. Bowie*, 236 F.3d 1083, 1089 (9th Cir. 2001); see also *Levenite*, 277 F.3d at 459-62. This obligation stems from two sources: first, the government enlists and controls and rewards its informants and is therefore in a unique position to evaluate their reliability. The second is that the prosecutor, as the representative of the sovereign, has an ethical obligation to ensure that the defendant is given a fair trial. See *Bowie,* 236 F.3d at 1089 (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)).

Unfortunately, because of the dynamics of this case, the government is in a weak position to guarantee the reliability of the cooperators' testimony. From the inception of this case, the cooperators have been well aware that any hopes of lenience rested on their ability to provide the government with useful information. The government is thus the primary target of the cooperators' efforts to escape punishment, and if the cooperators are lying, they will presumably be particularly careful not to reveal it to the government.

The 9th Circuit addressed issues of reliability and government obligations in a case with startlingly similar facts. In *Bowie*, three co-conspirators were charged with murder and kidnaping. There was some evidence that two of the three conspired to pin the murder on the third. The government's failure to fully investigate the possibility of collaborative perjury caused the Court to reverse the conviction. In its decision, the Court noted that when the government makes a deal with an informant, "each contract for testimony is fraught with the real peril that the proffered testimony will not be truthful, but simply factually contrived to 'get' a target of sufficient interest to induce concessions from the government." *Bowie*, 236 F.3d at 1095. The Court concluded that "rewarded criminals represent a great threat to the mission of the criminal justice system." Id. Barry Tarlow has likewise documented the significant difficulties that prosecutors experience in holding their criminal informants accountable. See Barry Tarlow, *Perjuring Informants Brought to the Bar*, RICO Report, CHAMPION 33-40 (July 2000). Tarlow, a former prosecutor, explains how prosecutors may be drawn in by informants who have strong motivations to pin responsibility on others, and notes the heavy pressures on prosecutors to rely on unreliable compensated witnesses when others are unavailable. Given the inherent "peril" of rewarded testimony and the government's heavy reliance on it in this case, the government should not be permitted merely to proffer its good faith belief in

the reliability of its witnesses. It is rather appropriate to hold a hearing to establish the reliability of the witnesses through adversarial questioning and a neutral evaluation by the Court.

### V. A PRETRIAL RELIABILITY HEARING IS REQUIRED TO TEST THE INFORMANT'S RELIABILITY OUTSIDE THE PRESENCE OF THE JURY

In this case, the interests of justice and a fair trial require a pretrial reliability hearing to permit the Court to ascertain the reliability and probative value of the cooperators' testimony. The Court has clear authority to hold such a hearing pursuant to Federal Rule of Evidence 104(c), which provides: "Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall be so conducted when the interests of justice require . . . ." The rules of evidence likewise obligate the Court to screen out unfairly prejudicial, harmful, confusing or otherwise unhelpful evidence. Federal Rule of Evidence 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Likewise, Federal Rule of Evidence 701, limits lay witness testimony to testimony that is "helpful" to the trier of fact. At least two courts have ordered reliability hearings whenever incarcerated informants ("jailhouse snitches") are proposed witnesses. See *Dodd v. State*, 993 P.2d 778,784 (Ok. Ct. of Crim. App. Jan. 6,2000) (Strubhar, J., concurring) (approving lower court imposition of "reliability hearing" comparable to *Daubert* hearing); *D'Agostino v. State*, 107 Nev. 1001, 823 P.2d 283 (Nev. 1992) (holding that before "jailhouse incrimination" testimony is admissible the "trial judge [must] first determine[] that the details of the admissions supply a sufficient indicia of reliability"). The Illinois Governor's Commission on Capital Punishment has likewise recommended

reliability hearings whenever incarcerated informants are offered as witnesses. See Illinois Governor's Report at 30 & 122; 122-123 (detailing the Los Angeles Grand Jury investigation of jailhouse snitch testimony). These recommendations apply here with equal force. Jailhouse snitches are incarcerated defendants who provide information to law enforcement in exchange for charging and sentencing benefits. The ability of such snitches to fabricate confessions and other evidence has become infamous.' Precisely the same concerns are present where, as here, the informant is in custody, subject to criminal penalties, and is offering unique, unverifiable information in exchange for lenience.

The law's treatment of expert witnesses further supports the holding of a reliability hearing in this instance. In *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), the Supreme Court determined the need for a special mechanism to evaluate the reliability of expert witnesses because experts pose thorny problems of cross-examination and persuasion. Experts, for example, rely on specialized information that is not directly available to the jury. *Daubert,* 509 U.S. at 592. The court held that the concerns underlying Rule 403 are preeminent because expert witnesses can have such a potent effect on juries:

> *Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 [I exercises more control over experts than over lay witnesses.*

*Daubert*, 509 U.S. at 595. Moreover, as Professor Harris has noted, expert witnesses are compensated, violating the usual presumption against the use of paid testimony. See Harris, Testimony for Sale, 28 Pepp. L. Rev. 1 at 1-5. The suitability of compensated expert testimony is thus determined in part by pre-trial judicial examinations of reliability. Informants pose many of

the same special concerns that expert witnesses do. Unlike typical lay witnesses, they are compensated, they have personal interests in the outcome of the case, their testimony is difficult to test on cross-examination, and they are selected and controlled by the propounding party. See Harris, *Testimony for Sale*, at 49-59. Like experts, moreover, informant testimony can be "powerful and quite misleading." At least one court has expressly extended the principles of Daubert to cover informants, imposing a "reliability hearing" requirement whenever the testimony of a so-called "jailhouse snitch" is involved. *Dodd v. State*, 993 P.2d 778, 784 (Ok. Ct. of Crim. App. Jan. 6, 2000) (Strubhar, J., concurring) (approving lower court imposition of "reliability hearing" comparable to *Daubert* hearing). In this case, the cooperators are the sole witnesses to the most of the crimes charged and their version of the story will carry heavy weight with the jury. In the same way that courts act as "gatekeepers" with respect to experts, it is appropriate for this Court to ensure that unreliable informant testimony does not taint the jury.

    **WHEREFORE,** for all these reasons, Ms. Graves moves to exclude the testimony of the cooperators, and for a pretrial reliability hearing to evaluate the reliability and probative value of the cooperators' testimony.

Respectfully submitted,

_____
Jensen E. Barber II
Law Offices of J. E. Barber, PC
400 7th Street NW
Suite 400
Washington, D.C. 20004-2242
202-737-8511
Jebarberpc@aol.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 23, 2007, a copy of the foregoing was served through the electronic document filing system of the United States District Court for the District of Columbia to the attorneys of record in the above-captioned case.

_____/s/_____
Jensen E. Barber II

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br><br> vs. <br><br> *Blakney, et al* <br> **Re: INDIA GRAVES,** <br>  **Defendant** | CR Nº: 1:06-cr-00021-RBW-4 |

**ORDER**

Upon consideration of Defendant Graves' Motion to Exclude Cooperating Witness Testimony and Request for a Reliability Hearing Motion and any response thereto, it is this ____ day of October 2007, hereby

   **ORDERED** that the requested relief is **GRANTED;** and it is further

   **ORDERED** that the Government is ordered to provide the requested information on or before November 30, 2007 and at the next status conference a hearing date will be scheduled.

   **SO ORDERED**.

_____
THE HONORABLE REGGIE B. WALTON
UNITED STATES DISTRICT COURT JUDGE