UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 06-21 (RBW) |
| | : | |
| INDIA GRAVES, | : | |
| Defendant. | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE DETENTION ORDER AND ORDER CONDITIONS OF RELEASE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this opposition to defendant's Motion To Vacate Detention Order and Order Conditions of Release. As Magistrate Judge Alan Kay determined on August 30, 2006, the record establishes that the defendant's pretrial release would constitute an unreasonable risk of danger to the community and would constitute an unreasonable risk of flight. Thus, we ask this Court to deny defendant's motion for bond pending trial. In support of this opposition, the Government relies on the points and authorities set forth in this memorandum and at any hearing on this matter.

## BACKGROUND

On or about August 23, 2006, India Graves and seven co-defendants were indicted by a federal grand jury sitting in the District of Columbia in a 115-count indictment. The defendant was indicted in Count One, Conspiracy To Distribute and Possess With Intent to Distribute more than 1 kilogram of Heroin, more than 5 kilograms of Cocaine, more than 50 grams of Cocaine Base, more than 1 kilogram of Phencyclidine and Cannabis; in Count 11, Possession with Intent to Distribute more than 50 grams of Crack Cocaine Base; in Count 12, Possession with Intent to Distribute Cocaine; in Count13, Possession with Intent to Distribute Heroin; in Counts 7, 18, 19, 20, and 21,

possessing firearms (including an UZI-type 9mm firearm, a Taurus .40 cal. semi-automatic handgun, and a Smith & Wesson semi-automatic handgun) during drug trafficking offenses; in Counts 53, 54, 55, 56, 57, 58, 59, 60, 61, 63, 64, 66, 68, 70, and 71, Unlawful Use of a Communication Facility; and Count 69, Unlawful Destruction, Alteration or Concealment of Records or Tangible Objects in a Federal Investigation.  The defendant is facing a mandatory minimum of 10 years and up to life on the conspiracy count, a mandatory minimum of 10 years and up to life on the possession with intent to distribute crack cocaine count, up to 20 years on each of the counts for possession with intent to distribute cocaine and heroin, a mandatory minimum of 5 years and up to life (consecutive) for the first conviction for possessing a firearm during a drug trafficking offense, a mandatory minimum of 25 years and up to life (consecutive) for the four subsequent counts for possessing a firearm during a drug trafficking offense, up to 4 years on each communication count, and up to 20 years for the obstruction of justice count.  Accordingly, India Graves faces a minimum of over 100 years incarceration if convicted of the charged offenses.

     On or about August 25, 2006, the defendant was arrested and presented before Magistrate Judge Kay.  Magistrate Judge Key held the defendant without bond pending her detention hearing.  On August 30, 2006, Magistrate Judge Kay presided over the defendant's detention hearing.  The Government asked the Court to hold the defendant without bail pending trial, in accordance with the Bail Reform Act, 18 U.S.C. § 3142(f).  That motion was based on 18 U.S.C. § 3142(f)(1)(B) and (C) which authorizes pre-trial detention in any case involving a crime for which the maximum sentence is life imprisonment and in any case under the Controlled Substances Act, 21 U.S.C. § 801, et seq., carrying a maximum penalty of ten years or more in prison.  Counts 1, 7, 11, 18, 19, 20, and 21, of the indictment charge the defendant with crimes which carry a term of up to life imprisonment.  The

motion was also based on 18 U.S.C. § 3142(f)(2)(A) and (B) which authorizes pre-trial detention in any case involving a serious risk that the defendant would flee or a serious risk that such person would obstruct or attempt to obstruct justice. The law also presumes that persons should be incarcerated pending trial when charged with such serious narcotics offenses and with possessing firearms during the commission of a drug trafficking offense, crimes for which defendant has been indicted. 18 U.S.C. § 3142(e).

At the detention hearing, Magistrate Judge Kay concluded that the defendant should be held without bond. The Court found that the defendant was a danger to the community and an unreasonable risk of flight and there were no conditions of release that would assure the safety of the community or the appearance of the defendant. In the Court's written Detention Order, dated September 7, 2006 (Docket No. 33), Magistrate Judge Kay, relied upon defendant's indicted offenses and three occasions on which law enforcement officers had found the defendant in possession of drugs and/or guns. The most recent occasion began on January 26, 2006, when agents and officers of the FBI and the Metropolitan Police Department executed a search warrant on the defendant's residence located on Ridgecrest Court in southeast Washington, D.C. The agents found the defendant, co-defendant Cinquan Blakney and their 2-year-old child in one of the bedrooms. Agents also found co-defendant Ralph Ingram and co-defendant Tristen Sellers in a separate bedroom. In the bathroom tub, agents found small plastic bags containing over 11 grams of heroin, over 66 grams of powder cocaine and over 37 grams of crack cocaine base. On the floor of the bathroom, agents found an Uzi-type 9mm semi-automatic firearm containing one round in the chamber and 34 rounds in the its magazine. In a child's bed, under the mattress, agents found a Smith & Wesson handgun containing one round in its chamber and 10 rounds in its magazine. Both firearms were test-fired

and found to be operable. In the kitchen of defendant's home, agents found a microwave oven and three scales. All four items found in the kitchen contained residue consistent with that normally left by illegal drugs.

The following day, agents executed a search warrant on a Chrysler minivan parked outside the Ridgecrest apartment which was registered to co-defendant Cinquan Blakney. Agents found a coffee grinder, razor blades, strainers, spoons, hundreds of ziplock bags and plastic bottles containing manatol and quinine, all used in the manufacturing and packaging of heroin and cocaine.

The second occasion in which the defendant was found in possession of guns and drugs was on March 3, 2004. As found by Magistrate Judge Kay, United States Marshals, in an attempt to locate another fugitive, knocked on the door of defendant Graves's residence in the District of Columbia. Graves answered the door with a .40 caliber pistol on her person. Law enforcement officers executed a search warrant on this residence and found $1,000 in cash and a child's backpack containing mannitol, quinine, ziplock bags, and a coffee grinder with heroin residue.

Defendant Graves's earliest drug-and-gun offense proffered by the United States during Graves's detention hearing occurred in 2003 when officers executed a search warrant at a residence on Yuma Street in southeast Washington, D.C. Officers found a female purse containing a loaded handgun and the personal effects of defendant Graves. A source told officers that Graves had just left the building. Officers also found several handguns during their search at this location, along with over 1000 grams of marijuana.

During the detention hearing, the United States also detailed the defendant's involvement in obstructing and impeding the federal investigation that resulted in her indictment in this case. Magistrate Judge Kay found that the defendant removed objects from her Ridgecrest home shortly

4

after a search warrant was executed on the home of Blakney's relative on December 31, 2005. The defendant, as part of and in furtherance of the narcotics conspiracy for which she was indicted, conspired with Blakney and others to conceal, hide, move and destroy evidence of the drug conspiracy that was in Graves's home on Ridgecrest Court for fear that a search warrant would be executed there next. Law enforcement officers intercepted and recorded telephone calls during which Graves told Blakney about the execution of a search warrant on the home of Blakney's relative. Blakney told defendant Graves to "straighten everything up." Defendant Graves asked Blakney if she should "trash everything." Blakney responded, yes. During a call just minutes later, Blakney told defendant Graves to take everything out of there, including receipts and books and that he will send someone. In a subsequent call between defendant Graves and a relative of Blakney in which they were talking about the search warrant, Graves was recorded telling the relative that she was "cleaning up the house." On another phone call, agents recorded Graves saying that co-defendant Ralph Ingram came and got everything.

## **ARGUMENT**

This Court should not overturn Magistrate Judge Kay's decision to hold the defendant without bond. When detention has been granted, 18 U.S.C. § 3145(b) states:

> (a) Review of a detention order – If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation of the order. The motion shall be determined promptly.

In reviewing a detention order, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate

5

> authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . ***This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release***.

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3486-3487. (Emphasis added.)[1]

---

[1] The Court must always consider whether defendant's release may pose a danger to the community or a risk of flight. This point is made throughout the Bail Reform Act. Section 3142(e), which authorizes detention without bail pending trial, which reads:
> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably ***assure the appearance of the person as required and the safety of any other person and the community***, such judicial officer ***shall order*** the detention of the person before trial.

Emphasis added. Similarly, § 3142(f) reads:
> The judicial officer shall hold a hearing to determine whether any condition of combination of conditions set forth in subsection (c) of this section will reasonably ***assure the appearance of such person and the safety of any other person and the community*** –
>   (1) upon motion of the attorney for the Government, in a case that involves,
>     (B) an offense for which the maximum sentence is life imprisonment or death;
>     (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq*.) . . .
>   (2) Upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves,
>     (A) a serious risk that [the defendant] will flee; or
>     (B) a serious risk that such person will obstruct or attempt to obstruct justice . . .

Emphasis added. This point is again made in § 3142(g), **Factors to be considered**, which states:
> The judicial officer shall, in determining whether there are conditions of release that will reasonably ***assure the appearance of the person as required and the***

There are no conditions of release that will ensure that defendant will not pose a danger to the community or a risk of flight if released. This is based first upon the presumption to that effect written into the Bail Reform Act. 18 U.S.C. § 3142(e) ("Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions of release will reasonably assure the the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act . . . or an offense under section 924(c) . . . of this title [possessing a firearm during a drug trafficking offense]"). This presumption, triggered by indictment, is overwhelmingly reinforced by the facts of the case.

The defendant has been a willing and longstanding participant in a large drug trafficking conspiracy, and she is not a minor player. This is supported by the large quantity of drugs, the drug trafficking paraphernalia recovered from her homes on two occasions spanning several years, the number and high-powered nature of the firearms recovered from her person and her home and her willingness to obstruct justice to protect and further the drug conspiracy as evidenced by her own words which were intercepted over the telephone.

The defendant may argue to the Court that she poses no risk of drug trafficking if released

---

*safety of any other person and the community*, take into account the available information concerning –
    (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
    (2) the weight of the evidence against the person;
    (3) the history and characteristics of the person . . .
    (4) *the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .*
(Emphasis added.)

7

because Blakney is incarcerated. It should be noted, however, that defendant Graves was recently caught bringing illegal narcotics into jail while being held without bond in this case. Clearly, not even incarceration has precluded her from being involved with illegal narcotics. Moreover, the defendant's drug trafficking activity has not been abandoned despite her repeated involvement with law enforcement officers and the execution of search warrants on her residences and those of her associates.

These facts embody the danger that defendant's release poses. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . . The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community.

S.Rep. No. 225, supra, at 3195-3196.

The defendant argues that her community ties and the fact that she is a mother of three children overcome the presumption that she should be held pending trial. Again, the framers of the 1984 Bail Reform Act thought differently. "The Committee also notes with respect to the fact of community ties that it is aware of the growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community." S.Rep. No. 225, supra, 3207. Nor is it clear why her children and community ties, which clearly were not enough to keep the defendant from breaking the law previously, will suddenly keep her on the straight and narrow. It is clear from the proffered proof of defendant's

steady and ongoing participation in the charged conspiracy that Magistrate Judge Kay found no solace in his community ties on the question of danger to the community and risk of flight. In fact, Magistrate Judge Kay found that she possessed in her home firearms, narcotics and drug trafficking paraphernalia while her infant children were present and that one firearm was hidden under the mattress in the children's bedroom.

      The defendant also appears to argue that she is not a risk to the safety of the community because the Government might have once been willing to agree to a "time served" sentence for her if Cinquan Blakney and other defendants pleaded guilty in a wired plea situation. The defendant assumes too much. First of all, the only thing this establishes is that the United States views Cinquan Blakney as a relatively more dangerous individual and might be willing to sacrifice a much harsher and deserving sentence for Graves in order to ensure that Blakney is incarcerated for many years, 15 years under the proposed wired plea. As evidenced by the facts in this case, under no circumstances would we concede that Graves is not a serious danger to the community. The only thing the Court should infer from the Government's attempt to nail down a plea and sentence for Cinquan Blakney is that the Government believes that Cinquan Blakney, who was convicted of killing two people while a juvenile and is the driving force in this conspiracy, is a **grave** danger to individual persons and to the community in general.

      Additionally, defendant Graves would remain a serious risk of flight and to obstruct justice if she is released pending trial. First, defendant Graves is facing the rest of her life in jail if she is convicted of the offenses with which she is charged, a great incentive for her to flea and once again obstruct justice. In this regard, the risk of her fleeing to avoid prosecution is further evidenced by the fact that she has already been indicted for obstruction of justice, a clear indication that she is

undeterred by the rule of law and those charged with enforcing the law, including this Court. It should go without saying, but the defendant has failed to rebut the presumption that she is a risk of flight. Second, the risk for further obstruction is great if she is on release while both her and Cinquan Blakney are pending trial.

In summary, if the defendant was released, she would constitute a clear danger to the community and a risk of flight. The defendant's bond motion provides no new information that Magistrate Kay did not have before him on August 30, 2006, and there are no facts warranting a change in the defendant's release conditions. The only thing that has changed is that the defendant committed an additional criminal offense (attempting to smuggle drugs into jail) since her incarceration. This is a window into the defendant's respect for the law and her continued danger to the community.

WHEREFORE, the United States respectfully requests that the defendant's motion be denied and the defendant be held without bond pending trial.

          Respectfully submitted,

          JEFFREY A. TAYLOR
          UNITED STATES ATTORNEY


          GEORGE ELIOPOULOS
          ANTHONY SCARPELLI
          Assistant United States Attorneys

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 06-21 (RBW)** |
| | : | |
| **INDIA GRAVES,** | : | |
| **Defendant.** | : | |

## ORDER

Upon consideration of the defendant's Motion to Vacate Detention Order and Order Conditions of Release and the government's opposition thereto, it is, this _____ day of January, 2008,

ORDERED that the defendant's motion is denied.

_____
REGGIE B. WALTON
United States District Judge