UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 06-21 (RBW) |
| v. : | |
| : | |
| CINQUAN BLAKNEY, et al. : | |
|    (Cinauan Blakney, : | |
|    Ralph Ingram, : | |
|    Tristan Sellers, : | |
|    India Graves, : | |
|    Sean Blakney, : | |
|    James Morgan, : | |
|    Kevin Morris, : | |
|    Donovan Bostick) : | |
|                                   : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS'
MOTIONS TO SUPPRESS WIRETAP EVIDENCE**

      The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendants Cinquan Blakney's, Ingram's, Morris's, Sean Blakney's Graves's, and Morgan's motions to suppress wiretap evidence (Documents 124, 105, 103 & 128, 110, 117 & 118) and Cinquan Blakney's related motion to suppress the introduction of the fruits of the search from 2101 Ridgecrest Court (Document123). As grounds for this opposition, the United States relies on the following points and authorities and  such other points and authorities as may be cited at a motions hearing.

## I.  Facts

**A.    Morris Wire.**

      On September 21, 2005,  the United States applied for an Order from the Honorable Emmet G. Sullivan authorizing the interception of wire communications occurring to and from telephone

number 202-277-8374, used by target user Kevin Morris, a.k.a. "KK." The application for authorization to intercept communications to and from said cellular telephone number was supported by probable cause to believe that targeted interceptees Kevin Morris, Cinquan Blakney, Donovan Bostick, Anthony Moody, and Antonio Jones, [1] and others who were yet unknown, (hereinafter "targets"), were committing federal offenses involving: (i) possession with intent to distribute and distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1); (ii) conspiracy to commit such offenses, in violation of 21 U.S.C. § 846; (iii) use of communications facilities to facilitate the commission of the above offenses involving controlled substances, in violation of 21 U.S.C. § 843(b); and, (iv) money laundering, in violation of 18 U.S.C. §§ 1956 and 1957. The requested Order was granted on September 21, 2005, authorizing electronic surveillance over the cellular telephone for a period of thirty (30) days. Electronic surveillance began on September 22, 2005, and the court granted authority to extend the period of interceptions. On November 19, 2005, law enforcement terminated the Morris intercept. A total of approximately 19,320 activations were intercepted.

      **B.**     **Cinquan Blakney Cellular Phone and Hardline Wires.**

On November 22, 2005, the United States applied for an Order from the Honorable Emmet G. Sullivan authorizing the interception of communications occurring to and from telephone numbers 202-270-1772 (Blakney's cellular phone) and 202-889-6557 (home phone at 2101 Ridgecrest Court, S.E., Washington, D.C.), used by target user Cinquan Blakney. The application for authorization to intercept communications to and from said telephone numbers was supported

---

[1] The following group was added in the extension request: India Graves, Karen Blakney, Myron Williams, Tijuan Arrington, Kiani Morris, Maureen Morris, Gene Evans and others who were yet unknown.

by probable cause to believe that targeted interceptees Cinquan Blakney, Kevin Morris, Donovan Bostick, Anthony Moody, Kevin Gray, Eric Weaver, India Graves, Andrea Gobbs, Karen Blakney, Myron Williams, Tijuan Arrington, and others as yet unknown, (hereinafter "targets") were committing the following offenses: (i) Possession with Intent to Distribute and Distribution of Controlled Substances, in violation of Title 21 United States Code, Section 841(a)(1); (ii) Conspiracy to commit such offenses, in violation of Title 21 United States Code, Section 846; (iii) Use of Communication Facilities to Facilitate the Commission of the above offenses involving controlled substances, in violation of Title 21 United States Code, Section 843(b); (iv) and money laundering, in violation of Title 18 United States Code, Section 1956 and 1957; crimes of violence in aid of racketeering, in violation of Title 18 United States Code, Section 1962; and RICO conspiracy, in violation of Title 18 United States Code, Section 1962(d). The requested Order was granted on November 22, 2005, authorizing electronic surveillance over the telephones for a period of thirty (30) days. Electronic surveillance began on November 22, 2005, on both phones and the Court granted authority to extend the period of interceptions. Surveillance continued until January 27, 2006. A total of approximately 6,209 activations were intercepted from telephone number 202-270-1772 and a total of approximately 5,464 activations were intercepted from telephone number 202-889-6557.

## II. Issues

Kevin Morris challenges the admission of the wiretap evidence by arguing 1) that the affidavits in support of the wiretap applications did not meet the "necessity" requirement of 18 U.S.C. §3518(c)) because they failed to show that normal investigative procedures were exhausted

to justify the wiretap; and 2) that the Government failed to comply with wiretap statues involving the appropriate minimization for non-pertinent intercepted conversations.

Cinquan Blakney challenges the admission of wiretap evidence on the grounds that the affidavits failed to establish "necessity" as contemplated in 18 U.S.C. §3518(c) and requests a hearing pursuant to Franks v. Delaware, 43 U.S. 154 (1978). Cinquan Blakney also attacks the search warrant issued for 2101 Ridgecrest Court, S.E., on the grounds that it relied upon the wiretap evidence (Document 123). Ralph Ingram also challenges the admission of wiretap evidence on the grounds that the affidavit failed to establish "necessity" as contemplated in 18 U.S.C. §3518(c). He also joined in Morris's motion (Document 118).

None of the other defendants filed substantive motions attacking the wiretaps. Graves joined in Morris's motion, Sean Blakney joined in Morris's and Ingram's motions, and James Morgan joined in every other defendant's motions. Sellers and Bostick have not contested the wiretaps either through their own motions or by joining in the wiretap motions of any other defendants.

### III. Argument

**A. Standing**

Only an "aggrieved person" who has otherwise been a victim of a Fourth Amendment intrusion may move to suppress evidence derived from a wiretap authorization. 18 U.S.C. §2518(10)(a). Section 2510(11) defines an "aggrieved person" as "one who was a party to any intercepted wire, oral or electronic communication or a person against whom the interception was directed." The Supreme Court has held that in order for a defendant to have standing to seek suppression of electronic surveillance evidence, the surveillance must be "violative of his own

Fourth Amendment right to be free of unreasonable searches and seizures." Alderman v. United States, 394 U.S. 165, 176 (1969)  ("Such violation would occur if the United States unlawfully overheard conversations of a [defendant] himself or conversations occurring on his premises, whether or not he was present or participated in those conversations")  Id.  See also United States v. Scott, 504 F.2d 194, 197 (D.C. Cir. 1978) aff'd, 436 U.S. 128. ("The prohibition against assertion of another's rights normally would preclude an aggrieved person from suppressing a conversation in which he did not participate.")

**B.    Necessity and Exhaustion Were Amply Demonstrated**

Title 18 U.S.C. §2518(1)(c) provides that each application for an order authorizing electronic surveillance must contain:

> A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.[2]

Similarly, prior to granting an order authorizing a wiretap, an issuing judge must find, among other things, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. §2518(3)(c).  These prerequisites to a wiretap are commonly known as the "necessity" and "exhaustion" requirements.

The purpose of the statutory exhaustion requirement is to ensure that "wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime," and to inform the issuing judge of the difficulties inherent in the use of traditional techniques.  United States v. Kahn, 415 U.S. 143, 153 n.12 (1974). But "the burden that these

---

[2] Necessity does not require the government exhaust every conceivable investigative technique before receiving authorization for a wiretap, just that those other investigative techniques reasonably appear unlikely to be successful or are too dangerous.

provisions impose upon the government to show the inadequacy of normal investigative techniques is not great, and the adequacy of such a showing is to be tested in a practical and common sense fashion." United States v. Anderson, 542 F.2d 428, 431 (7th Cir. 1976); accord, United States v. Armocida, 515 F.2d 29, 38 (3rd Cir.), cert. denied, 423 U.S. 858 (1975); United States v. Webster, 473 F. Supp. 586, 595 (D.Md. 1979) (statutory burden on the government is not great in showing compliance with exhaustion requirement), aff'd, 639 F.2d 174 (4th Cir.), cert. denied, 454 U.S. 857 (1981), modified on other grounds, 669 F.2d 185 (4th Cir. 1982), cert. denied, 456 U.S. 935 (1991); United States v. Askins, 351 F. Supp. 408, 414 (D.Md. 1972)(government's burden of establishing exhaustion is not great).

Moreover, 18 U.S.C. § 2518(c) does not require the literal exhaustion of all normal investigative techniques. United States v. Clerkley, 556 F.2d 709, 715 (4th Cir. 1977) ("police need not exhaust every conceivable technique before making application for a wiretap"), cert. denied, 436 U.S. 930 (1978). The statute requires only "that the agents inform the authorizing judicial officer of the difficulties inherent in the use of normal law enforcement methods." United States v. Torres, 901 F.2d 205, 231 (2d Cir.) (citations omitted), cert. denied, 498 U.S. 906 (1990); United States v. Sobamowa, 892 F.2d 90, 93 (D.C. Cir. 1989) (the government is not required to enumerate in its affidavit every technique or opportunity missed or overlooked), cert. denied, 498 U.S. 825 (1990). Rather, the government need show only that other techniques would be impracticable. United States v. Johnson, 696 F.2d 115, 123 (D.C. Cir. 1982); see also, United States v. Torres, 908 F.2d 1417, 1422 (9th Cir.) (although generally a wire intercept should not constitute the first step in an investigation, the government need not exhaust every conceivable investigative technique in order to show necessity), cert. denied, 498 U.S. 905 (1990); United States v. Garcia, 785 F.2d 214, 223

(8th Cir.) ("affidavit need not explain away all possible alternate techniques because investigators are not required to use wiretaps or eavesdropping devices only as a last resort"), cert. denied, 475 U.S. 1143 (1986). A "standard of reasonableness should be employed in measuring the affidavit against the statutory requirements." United States v. Oriakhi, 57 F.3d 1290, 1298 (4th Cir.) (showing of necessity is "'to be tested in a practical and commonsense fashion,' . . . that does not 'hamper unduly the investigative power of law enforcement agents'" (citations omitted)), cert. denied, 516 U.S. 952 (1995); United States v. Spagnuolo, 549 F.2d 705, 710 (9th Cir. 1977).

The United States Court of Appeals for the District of Columbia Circuit has recognized and applied the above-cited principles. United States v. James, 494 F.2d 1007, 1016 (D.C. Cir. 1974) ("Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely" [to succeed].). The Court has said that even though merely conclusory statements about necessity will not suffice, even conclusory statements "cannot rationally be separated from . . . preceding detailed descriptions of . . . investigative events." United States v. Sobamowo, 892 F.2d 90, 93 (D.C. Cir. 1989) (quoting Williams, 580 F.2d at 589).

Measured by the applicable legal principles described above, the wiretap authorization orders issued in this case were amply supported by the government's showing of "necessity" and "exhaustion." The government was thorough in its applications in explaining the investigative techniques it had undertaken before it applied for the initial wiretap authorization of defendant Morris's telephone. The affidavits submitted by FBI Special Agents Daniel Sparks and Scott Turner in support of the authorization for wire interceptions on defendants Morris's and Blakney's telephones included as purposes of the interceptions the nature, extent, and methods of operation of the narcotics trafficking activities in which interceptees and others as yet unknown are engaged;

identities, roles and telephone numbers of co-conspirators; the source, distribution and location of money and narcotics involved in those activities; existence of houses, apartments and other premises used in furtherance of illegal activity; the existence, location and source of proceeds of the activity; existence of other items used in furtherance of those activities; dates, times, and details for the continued commission of the above-mentioned offenses; and other evidence necessary for the successful prosecution and conviction of the above described activities (¶ 34).

As set forth in the affidavits, several less intrusive investigative techniques had been used or contemplated and found insufficient to accomplish the goals of the investigation. The techniques included law enforcement surveillance, debriefing of individuals who had been arrested in the target area or who stated they had information, controlled purchases, search warrants, use of the grand jury, analysis of pen register and toll data. (¶ ¶ 35-47). Agents Sparks and Turner explained with respect to each of these investigative techniques the results of using the technique, and/or why it was not used..

Defendant Morris posits that normal investigative procedures could have been used by the government to provide information concerning the entire conspiracy without the need to resort to electronic surveillance. He asserts that law enforcement could have used cooperating witnesses to purchase narcotics from Morris and that a cooperating witness had stated in 2004 that Cinquan Blakney supplied Morris. He also asserts that witness testimony from cooperators, search warrants, and interviews could have been obtained to show the extent of the organization. The limitations with Morris's suggestions are readily apparent. Undercover purchases of narcotics from Morris would not assist the government in determining the extent of the conspiracy, the identity of co-conspirators, including who was supplying Morris. With respect to using grand jury subpoenas, not only would

it be unlikely that witnesses would report to a grand jury and voluntarily implicate themselves or tell on their friends, such techniques would have tipped off the organization that they were the subject of a federal investigation. The government would not even have know to whom it would serve grand jury subpoenas in order to determine the identity of all co-conspirators and the location where it could recover evidence of the conspiracy. Similarly, the wholesale use of search warrants would have warned the crew that they were being investigated. As with grand jury subpoenas, the government would not have know for which locations to seek search warrants. The wiretaps were the vehicle for uncovering this information. In this regard, one successful seizure that Morris points to as evidence that the government did not need wiretaps is the 2005 seizure of Morris's Nissan 350 Z and $1,300 in cash. Morris fails to acknowledge that that seizure resulted during, and because of, the wiretap on his telephone.

Morris also argues that because one person who was interviewed by the government stated that Blakney was Morris's supplier of illegal narcotics, interviews are successful and adequate to prove the conspiracy. The government, however, is confident that Morris would not make the same argument at the close of a trial if that was all the evidence the government had. The mere fact that a cooperating witness stated that Cinquan Blakney supplied Morris is unlikely to convince a jury of that fact beyond a reasonable doubt. Moreover, as described by Agent Sparks in his affidavit, the government no longer had access to this cooperating witness. Additionally, Morris never identifies who else the government should have interviewed in order to have uncovered the full scope of the conspiracy.

Morris further claims that other large, gang-related investigations that Special Agent Sparks was involved in (<u>United States v. Tommy Edelin, et al.</u>, and <u>United States v. Kevin Gray, et al.</u>) did

not utilize electronic surveillance and, thus, electronic surveillance was not necessary here. Morris's logic is nonsensical and his factual assertions are incorrect. Every investigation presents its own hurdles, limitations and necessities. Merely because one investigation does not warrant a wiretap is irrelevant in determining whether another does. Morris is also mistaken – both the Edelin and Gray investigations utilized electronic surveillance, including telephone wiretaps and clone pagers. In fact FBI Special Agent Turner's November 22, 2005 affidavit in support of the wire application for Cinquan Blakney's telephones at ¶80 describes the wiretaps in the Gray case.

Finally, defendant Morris argues that the wiretap should be suppressed because of the alleged failure to minimize the interceptions of non-pertinent telephone conversations. Morris relies upon 18 U.S.C. Sec. 2518(5) which requires that the Government make a reasonable effort to minimize the privacy invasion of intercepted conversations that are identifiable as non-pertinent to the wiretap purpose. Morris argues that the government failed the minimization requirement because it allowed the interception of communications to extend for a period "longer than is necessary to achieve the objective of the authorization." Document 103 at p.13. In support of this argument, Morris again argues that the government, at the outset of the investigation of Morris, had already achieved the investigatory goal of discovering the purported supplier of drugs when a cooperating witness identified Cinquan Blakney as a supplier during an interview. Morris also argues that the wiretap extension order was not necessary because, during the first thirty day period, law enforcement intercepted several calls between Morris and Blakney that suggested that Blakney supplied Morris. Morris argues that any further evidence needed should have been obtained by means other than wiretaps.

Morris's minimization argument is merely an extension of his necessity argument, and is equally without merit. As the second affidavit made clear, the objectives were broader than just the identification of Blakney as a supplier. Other sources or suppliers had not yet been identified, although the government suspected that another individual, Antione Jones, may have been a supplier. (¶ 38 of the Affidavit for Continued Authorization). The structure and the inner workings of the drug organization, and the identity of all of the co-conspirators had not yet been revealed. Moreover, the government had insufficient information to confirm stash locations. The affidavit in support of the extension demonstrated that the government had not yet reached "attainment of the authorized objective." 18 U.S.C. Sec. 2518(5). There is simply no obligation to terminate a wiretap when sufficient evidence to prosecute has been gained against some of the targets or even if a major player in the conspiracy under investigation has been arrested, so long as the phone involved continues to be used for the conspiratorial activity. United States v. Newman, 733 F. 2d 1395, 1400 (10th Cir. 1984) (proper to continue surveillance even after search of target's home where the tapped phone was located since the "search of the defendant's residence did not foreclose the possibility that defendant would call or receive calls or visits from as yet unidentified members of the drug conspiracy).

Ingram asserts that because prior wire interceptions on telephones belonging to people other than Cinquan Blakney had not been successful in determining the full extent of the Blakney enterprise, the government needed to establish how additional electronic surveillance would succeed. First of all, 18 U.S.C. § 2518(c) does not require that the government quit investigating a criminal enterprise merely because past investigative techniques against other targets were unsuccessful in gaining evidence against a present target. Second, Ingram does not dispute that the prior wire authorizations he mentions (other than the Morris wire) were part of investigations focusing on

11

targets other than Blakney and that those wire authorizations were for telephones not used by Blakney.[3] Blakney was merely an incidental target in those cases. FBI Special Agent Sparks even states that although Blakney was a listed target interceptee in the Alvin Gasgen/Frederick Miller/Gerald Eiland investigation, it is not believed that Blakney was even intercepted. It was only during the instant investigation in which wiretaps were sought for the phones of Morris and Blakney that Blakney became one of the main targets. In this regard, Judge Sullivan found probable cause to believe that Blakney and others were committing specified criminal offenses and that Blakney's phones were being used for that purpose. There was no reason to believe that Blakney would not be intercepted, that evidence of his criminal activity would not be acquired and that the wiretaps would not be successful. To the contrary, the wiretaps in this case proved successful. Even with the aid of hindsight, the defendants do not make out a claim that the Government failed to comply with the provisions of 18 U.S.C. §2518(c).

Ingram and Cinquan Blakney also make a somewhat convoluted argument that if the wiretaps on Cinquan Blakney's phones are suppressed, then the evidence acquired from the search warrant of 2101 Ridgecrest Court, Apartment #204, S.E., Washington, D.C. should be suppressed.. They assert that because the search warrant affidavit relied upon the wiretaps, the search warrant is defective. Ingram's argument then goes further: he asserts that if the search warrant is invalidated then Ingram's statements should be suppressed.

Neither Ingram nor Cinquan Blakney, however, claim any standing to be able to attack the search warrant on the Ridgecrest Court apartment. A defendant does not have standing to challenge

---

[3] The undersigned has not yet acquired information on the Virginia Order for the interception of visual and nonverbal conduct mentioned in Ingram's wiretap motion at ¶ 19 and is unable to determine Blakney's status with respect to that order.

a search unless he has a reasonable expectation of privacy in the area searched. Rakas v. Illinois, 439 U.S. 128, 143 (1978). Ingram and Blakney have not asserted their status as a resident or even an overnight guest of the Ridgecrest. To the contrary, defendant Ingram admits in his Supplement to Motion to Suppress Evidence (Document 115 at p. 8) that "he was not the owner or occupant of the premises." Therefore, they have no standing to challenge the search warrant or the resulting search of that apartment.

But even assuming arguendo that wiretaps should be suppressed, and Ingram and Blakney had standing, the exclusionary rule would not bar admission of the evidence seized from the Ridgecrest apartment or the admissions of Ingram's statements. In United States v. Leon, 468 U.S. 897, 922 (1984), the Supreme Court held that the Fourth Amendment exclusionary rule should not be applied to exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in "objectively reasonable reliance" on the warrant. The Leon "good faith" exception to the exclusionary rule applies to such evidence unless (1) the affidavit was based on knowingly or recklessly false information, (2) the magistrate who signed it abandoned his "neutral and detached" judicial role, or (3) the affidavit is "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" United States v. Salamanca, 990 F.2d 629, 634 (D.C. Cir. 1993) (quoting Leon, 468 U.S. at 923). Here, there is no allegation that the judge who signed the warrant abandoned his neutral function or that the affidavit was based on false information. Thus, the outcome turns on whether the affidavit was "so lacking in indicia of probable cause" that it was "entirely unreasonable" for the police to have harbored an objective reasonable belief in the existence of probable cause. Leon, 468 U.S. at 926.

When a search warrant is based on illegally obtained evidence, courts must "reconcile the 'good faith' exception established in Leon, 468 U.S. at 919 . . . with the 'fruit of the poisonous tree doctrine' first coined in Nardone v. United States, 308 U.S. 338, 341 (1939)." United States v. McClain, ___ F. 3d ____, 2005 WL 3947962 (6th Cir. 2005), reh. denied, 2006 WL 827811 (Mar. 31, 2006).[4] In United States v. Thornton, 746 F.2d 39 (D.C. Cir. 1984), this Court held that the Leon good-faith exception applied even where a search warrant was allegedly tainted by evidence obtained through a warrantless search of a trash can. The defendant in Thornton had argued that "the search of the trash bag was unconstitutional, and without the contents of the trash bag, no probable cause existed." Id. at 48. The Court did not "reach the questions of probable cause" presented by Thornton. Id. at 49. Noting that there were no allegations that the police had acted dishonestly, or that the issuing judge had abandoned his neutral and detached judicial role, the issue became whether, under Leon, the indicia of probable cause set forth in the affidavit were so lacking that the police "could not have harbored an objectively reasonable belief in the existence of probable cause." Id. The Court rejected the challenge to the warrant because, "given that the overwhelming weight of authority

---

[4] Courts considering how to apply Leon in that context are divided. Compare, e.g., McClain, 2005 WL 3947962 at *7 (Leon exception applies where warrant based on an earlier warrantless search for which officers erroneously believed they had probable cause) and United States v. Thomas, 757 F.2d 1359, 1368 (2d Cir. 1985) (holding exception applicable to the subsequent warrant-authorized search of an apartment, even though affidavit contained evidence obtained in violation of Fourth Amendment, because officer, who acted in good faith, disclosed all information to magistrate and had no reason to believe his actions were unconstitutional) with United States v. McGough, 412 F.3d 1232, 1239-40 (11th Cir. 2005) (good-faith exception does not apply where search warrant is issued on basis of evidence obtained as the result of a prior illegal search) and United States v. Vasey, 834 F.2d 782, 789 (9th Cir. 1987) (holding that a "magistrate's consideration of the evidence [offered to support a search warrant] does not sanitize the taint of the [earlier] illegal warrantless search"); see also 1 Wayne R. LaFave, Search and Seizure § 1.3(f), at 76 (4th ed. 2004) ("when the warrant-issuing process leaves totally unresolved the lawfulness of the prior police activity, then there is no reason why that process should, via Leon, shield that activity from full scrutiny at the suppression hearing").

[though not all authority] rejects the proposition that a reasonable expectation of privacy exists with respect to trash discarded outside the home and the curtilege thereof," it was "eminently reasonable for the Superior Court judge, and the police officers, to believe that the trash bag search was constitutional." Id.

For the reasons discussed above, Judge Sullivan correctly found that the FBI satisfied the necessity requirement for the wiretap, and the search warrant on the Ridgecrest property properly relied upon the wiretap evidence. But even if reasonable jurists might disagree over whether the necessity requirement was satisfied, it cannot be said that the FBI "could not have had an objectively reasonable belief" that it satisfied the probable cause requirements for the search warrant. Thus, even if this Court determines that the government failed to satisfy the necessity or exhaustion requirements for the wiretap, the search warrant should still be upheld via application of Leon's good-faith exception. See United States v. Webb, 255 F.3d 890, 904-05 (D.C. Cir. 2001) (although search warrant affidavit based on stale information was "troubling," suppression inappropriate under Leon, as it could not be said that officers could not have harbored an objectively reasonable belief in probable cause). Since the wiretap was not clearly illegal and the facts support an objectively reasonable belief that the FBI had probable cause for the search warrant, the Leon good-faith exception applies to the evidence seized with the warrant. The agents reasonably relied on a warrant that was *not* so lacking in the indicia of probable cause as to render official belief in its existence, entirely unreasonable.

Additionally, even if this Court concludes that the wiretap affidavits had some infirmities, it should not suppress Ingram's subsequent statements on the mere argument that his statements were a product of a search warrant that relied upon a deficient wiretap. Ingram argues that any statements

obtained from him, even if preceded by Miranda warnings, are tainted by his arrest during the execution of what defendant Ingram contends is an unlawful search warrant. The Supreme Court in "Wong Sun squarely rejected [] the suggestion that the admissibility of statements [] obtained [following an illegal arrest] should be governed by a simple 'but for' test that would render inadmissible all statements given subsequent to an illegal arrest." Brown v. Illinois, 422 U.S. 590, 607 (1975) (Powell, J., concurring, discussing Wong Sun v. United States, 371 U.S. 471, 488 (1963) (internal quotations omitted). See Brown v. Illinois, 422 U.S. 590 (1975). Ingram's argument presents just such "a simple 'but for' test."

The correct inquiry for "determining whether a defendant's statements are tainted by antecedent illegality" is instead "a question of judgment:"

> Considering the purposes of the exclusionary rule in these matters (deterrence of illegal arrests and preservation of the integrity of the judiciary) and the competing purpose of discovering the truth in a criminal trial, the court is required to make a value judgment by considering three factors as they relate to those purposes: the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct.

State v. Barry, 429 A.2d 581, 584 (N.J.) (citing Brown, 422 U.S. at 603-04), cert. denied, 454 U.S. 1017 (1981). See Brown, 422 U.S. at 609 ("The notion of the 'dissipation of the taint' attempts to mark the point at which the detrimental consequences of illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost") (Powell, J., concurring); Wilkerson, 432 A.2d at 731-33; United States v. Green, 111 F.3d 515, 521 (7th Cir.), cert. denied, 522 U.S. 973 (1997). Here, defendant argues that his statements should be suppressed because they were tainted by alleged illegalities that were at least twice removed from the statements themselves. He asserts that the wiretaps were improperly acquired, which resulted in an improperly acquired search warrant, which then resulted in the defendant's arrest and statements. Clearly, the detrimental

consequences of the alleged illegal wiretaps become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost of suppressing defendant's statements. Also, Ingram's statement began two and a half hours after the allegedly unlawful seizure and after he was provided with Miranda warnings. See Oliver v. United States, 656 A.2d 1159, 1172 n.22 (D.C. 1995) (admissibility of confession affirmed; at least three hours passed between unlawful arrest and confession and Miranda warnings had been given). Moreover, the alleged illegalities with respect to the wiretaps and search warrant were not purposeful or flagrant on the part of the law enforcement officers. They acquired the wiretaps and the search warrant in good faith and there is no allegation to the contrary. See Rawlings v. Kentucky, 448 U.S. 98, 110 (1980) (no conscious or flagrant police misconduct requiring prophylactic exclusion of defendant's statements). Cf. Brown, 422 U.S. at 605 (illegal arrest "had a quality of purposefulness" – impropriety was obvious, and awareness of that fact was virtually conceded by detectives). Therefore, even if there were some irregularities in the wiretap affidavits, defendant Ingram's post-arrest statements should not be suppressed.

Similarly, even if the wiretap affidavits demonstrate some infirmities, the good faith exception articulated in United States v. Leon, has been extended by numerous courts to electronic surveillance. See United States v. Moore, 41 F.3d 370 (8th Cir. 1994). Such infirmities would thus be cured by a good faith reliance on Judge Sullivan's determination that the government satisfied the requirements of the wiretap statute, including the existence of probable cause.[5] Nonetheless, the defendants'

---

[5] When assessing probable cause for warrants, [t]he task of the issuing magistrate is simply to make a practical, common- sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (citing Jones v. United States, 362 U.S. 257, 271 (1960)). The issuing court's

arguments regarding necessity and exhaustion are without merit.  The Government urges the Court to deny their motions.

### C. Cinquan Blakney's Request for a Franks Hearing is Without Merit

Cinquan Blakney requests a hearing on his motion pursuant to Franks v. Delaware, 438 U.S. 154 (1978).  His request is devoid of any basis for such a request, either factual or legal.  He does not state what information was omitted from the wiretap affidavits or how any omitted information was at all relevant or material.  He also does not claim any bad faith on the part of law enforcement for omitting any information.  In a Franks context, the burden is squarely on the movant – the defendant – to prove by a preponderance of the evidence that (1) the omitted information was material – that is, if included in the affidavit it would have negated probable cause, and, if so, (2) that the omission was the product of deliberate falsehood or of reckless disregard for the truth.  Franks v. Delaware, 438 U.S. 154, 156 (1978); Washington v. District of Columbia, 685 F. Supp. 264 (D.D.C. 1988).  Before a hearing is required under Franks, the defendant must make a "threshold showing" that the affidavit is false in some material respect:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portions of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of

---

determination of probable cause "should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (citation omitted).  Under LCr.R 57.10(d), only sitting judges of the U.S. district Court are permitted to review wiretap affidavits.  Magistrates are not so permitted.  Nevertheless, the guidance on determining probable cause is still applicable.

>witnesses should be furnished, or their absence satisfactorily explained.

Franks v. Delaware, supra, 438 U.S. at 171.  See Gaston, 357 F. 3d at 81 (allegations not sufficiently specific to warrant Franks hearing).  Because defendant Blakney has not even attempted to satisfy this burden, his request for a Franks hearing should be summarily rejected.

## IV. Conclusion

For the foregoing reasons, the Court should deny the defense motions to suppress wiretaps.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

By:     GEORGE ELIOPOULOS
ANTHONY SCARPELLI
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
**Counsel for United States**