UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 06-21 (RBW) |
| v. | : | Judge Reggie B. Walton |
| | : | |
| INDIA GRAVES, | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this opposition to defendant's Motion to Suppress Physical Evidence and Statements (Document 114). As grounds for this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a motions hearing.

**Background**

On March 3, 2004, at approximately 6:20 a.m., Deputy United States Marshals responded to 2303 Good Hope Road, S.E., Apartment 203, Washington D.C., to arrest a fugitive (not the defendant) after receiving information that the fugitive may be residing there. A Deputy U.S. Marshal knocked on the apartment door and after several minutes of knocking, defendant Graves opened the door. The Deputy U.S Marshals informed defendant Graves that they were attempting to locate a particular fugitive. Task Force members entered the apartment secured the two male and one female occupants of the residence to ensure the safety of the law enforcement officers and the occupants. A Deputy U.S. Marshal asked defendant Graves, for safety purposes,

if she had any weapons on her person. Defendant Graves advised the Deputy U.S. Marshal that she had a gun secreted in her pants. A loaded semi-automatic handgun was recovered from defendant Graves by a female Deputy U.S. Marshal.

Meanwhile, a different Deputy U.S. Marshal attempted to interview one of the male occupants of the apartment, identified as Quincy D. Mitchell. Prior to interviewing Mitchell, the Marshal picked up Mitchell's pants from the floor, so that Mitchell could properly dress himself. Again, in the interest of safety, the Marshal checked Mitchell's pants before handing them to Mitchell and discovered twenty-five bags of white powder believed to be heroin. The Marshal also found a gun in the tank of a toilet that Mitchell was sitting on during his interview.

The Marshals contacted the FBI's Safe Street Gang Task Force who arrived on the scene and secured it until a search warrant could be obtained. Detective Thomas Webb of the Task Force prepared a search warrant affidavit setting out the above facts, but with even more detail. Sometime between 10:45 a.m. and 11:45 a.m. Judge Goodrich of the D.C. Superior Court reviewed and approved the search warrant application. At 11:45 a.m., Special Agents of the FBI and MPD detectives conducted a search of the residence. Recovered from the residence were the gun that defendant Graves possessed, the gun in the toilet tank, the drugs from Mitchell's pants, mail matter, cash, photos, additional drugs, drug trafficking paraphernalia and other items. No occupant of the apartment was placed under arrest at this or any other time during this encounter.

**Argument**

I.   **SUPRESSION OF PHYSICAL EVIDENCE IS NOT PROPER.**

1.   **The Evidence Was Legally Discovered.**

Defendant first moves to suppress the physical evidence claiming that the evidence was seized prior to the attainment of a search warrant.[1]  Defendant's contention should be rejected. This case is controlled by Payton v. New York, 445 U.S. 573 (1980), in which the Supreme Court addressed the authority of police to enter the suspected home of a suspect without a search warrant.  445 U.S. at 576.  Finding that the sanctity of the home is at the core of the privacy interests protected by the Fourth Amendment, the Court ruled that, to legally enter a suspect's home absent consent or exigent circumstances, police must have an arrest warrant.  Id. at 589-92, 603.  Significantly, the Court did not require that police have a search warrant based on probable cause to believe that the suspect is at home at a given time.  Although recognizing that a search warrant might afford greater protection to the suspect's interest in the privacy of his home, the Court ruled that an arrest warrant provides adequate protection:

> If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law.  Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.

---

[1]   We note that substantial evidence other than the two guns and the 25 ziplocks of heroin was discovered and seized pursuant to a valid search warrant.  Defendant does not appear to attack the admissibility of this evidence.

Id. at 602-603. The United States Court of Appeals for the D.C. Circuit, relying upon Payton, expressly held in United States v. Thomas, 429 F.3d 282 (D.C. 2005), that "an officer executing an arrest warrant may enter a dwelling if he has only a 'reasonable belief,' falling short of probable cause to believe, the suspect lives there and is present at the time." Id. at 286.

Once entering a home to make an arrest of a person residing inside that home, the police may conduct a "protective sweep, that is, a quick and limited search of premises ... to protect the safety of officers or others." Maryland v. Buie, 494 U.S. 325, 327 (1990); Thomas, 429 F.3d at 286-287; In re Sealed Case, 153 F.3d 759, 769 (D.C. Cir. 1998). Buie held that two types of warrantless protective sweeps incident to arrest are reasonable and lawful under the Fourth Amendment. First, "as an incident to the arrest, officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Buie, 494 U.S. at 334. Second, police may undertake a broader sweep of the home, when they are aware of "articulable facts which, when taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. Such searches are reasonable given the

> interest of officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack. The risk of danger in the context of an arrest in the home is as great as, if not greater than, it is in the on-the-street or roadside investigatory encounter. . . . A protective sweep occurs as an adjunct to the serious step of taking a person into custody for the purposes of prosecuting him for a crime. Moreover, unlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage of being on his

>adversary's "turf." An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings.

Id. at 333.

In the instant case, the Marshals properly entered the Good Hope Court apartment believing that a fugitive was residing there. Once entering the apartment, the Marshals also properly conducted a protective sweep. There is no evidence that the Marshals conducted a general search of the apartment. When India Graves admitted that she had a loaded gun in her pants. Since an easily accessible loaded gun can be used to launch an attack by defendant against law enforcement officers, the Deputy U.S. Marshals were justified in retrieving it. At that point they also had probable cause to search Graves and seize the weapon. Similarly, the heroin in Mitchell's pants was discovered pursuant to the protective sweep as Deputy U.S. Marshals were attempting to ensure that Mitchell's pants did not contain any weapons before handing the pants to Mitchell. Deputy U.S. Marshals were also justified in checking the tank of the toilet on which Mitchell was sitting for weapons, particularly after a gun was recovered from Graves, since Mitchell could easily grab any weapons located within arm's length to launch a potential attack against the law enforcement officers. Thus, the discovery of a gun in defendant's pants, the drugs found in Mitchell's pockets before handing him his pants, and the gun found in the tank of the toilet Mitchell was sitting on were discovered during the course of a lawful protective sweep.

**2.   The Evidence Was Recovered Pursuant To A Search Warrant**

Additionally, suppression of the evidence would not be an appropriate remedy because the evidence was ultimately recovered as a result of a search warrant and the officers conducting

the search acted in "objectively reasonable reliance" on the warrant's validity. United States v. Leon, 468 U.S. 897, 922 (1984). In Leon, the Supreme Court held that evidence need not be suppressed when police obtain the evidence through objective good faith reliance on a facially valid warrant that is later found to lack probable cause. Id. Ordinarily, the existence of a warrant is sufficient to establish that the officers acted in good faith in conducting the search. Id. Suppression in such a case is appropriate only if "the magistrate abandoned his detached and neutral role" in assessing the affidavit or if "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 926.

Here, there is no evidence that the information in the affidavit was false or made in reckless disregard for the truth; that the magistrate judge "wholly abandoned" his judicial role; or that the affidavit was so "lacking in indicia of probable cause" or so "facially deficient" that the executing officers could not reasonably rely on it. Leon, 468 U.S. at 923 (citations omitted). To the contrary, the affidavit plainly advised the judge that reviewed and approved the search warrant application of the facts giving rise to the Marshal's entry into the Good Hope Court apartment, who was located in the apartment, and how it was that the guns and the heroin were recovered by the Marshals. Based on these representations, the judge approved the search warrant and the Safe Streets Task Force, in good faith reliance on the warrant, executed the warrant and seized the evidence, including the evidence discovered by the Marshals.

**3.    The Evidence Is Admissible Under The Inevitable Discovery Doctrine.**

The evidence acquired from the Good Hope Court apartment would also be admissible pursuant to the inevitable discovery doctrine. Once defendant informed the Marshals, who were

lawfully in the apartment, that she had a loaded gun hidden in her pants, probable cause existed to seize the gun and apply for a search warrant. All evidence in the apartment would have been subsequently discovered pursuant to the search warrant obtained only a few hours later by the FBI. The inevitable discovery doctrine plainly allows the admission of the evidence. Nix v. Williams, 467 U.S. 431 (1984); United States v. Webb, 796 F.2d 60, 62 (5th Cir. 1986)(inevitable discovery where evidence showed police would continue searching for the body and where the incriminating evidence was within the area likely to be searched), cert. denied, 479 U.S. 1038 (1987).

**4.        Defendant Lacks Standing Regarding The Drugs Found In Mitchell's Pants.**

A defendant seeking suppression bears "the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." Rakas v. Illinois, 439 U.S. 128, 130, n.1 (1978); United States v. Hicks, 978 F.2d 722 (D.C. Cir. 1993) (motion to suppress properly denied where defendant failed to assert any basis upon which he had legitimate expectation of privacy in his friend's apartment), cert. denied, 115 S. Ct. 1162 (1995). In order to sustain this burden, the defendant must establish that he had a legitimate expectation of privacy in the area searched or a proprietary interest in the property seized. United States v. Salvucci, 448 U.S. 83, 91 92 (1980); Rakas, 439 U.S. at 142-143. A defendant may claim the benefits of the exclusionary rule only if his own constitutional rights have been violated and cannot vicariously assert the rights of others. See Salvucci, 448 U.S. at 91-92; Rakas, 439 U.S. at 142-143; United States v. Mitchell, 951 F.2d 1291, 1298 99 (D.C. Cir. 1991) (mere passenger in a car lacks standing to object to the search of the car), cert. denied, 504 U.S. 924 (1992).

Since defendant fails to meet the burden establishing that she has a proprietary interest in the pants of Mitchell, she cannot claim the benefits of the exclusionary rule for the heroin recovered from there. Since defendant lacks the standing to suppress this evidence, the heroin incidentally discovered during the course of a lawful protective sweep by the Marshals is admissible at trial.

**II..    STATEMENTS MADE BY DEFENDANT SHOULD NOT BE SUPPRESSED.**

Marshals arrived at defendant's residence in search of a fugitive and not to arrest defendant. After knocking on the apartment door, the Marshals were greeted by defendant. The Marshals advised her that they were looking for a fugitive (not the defendant). The defendant was never placed under arrest. For the Marshals' protection, the defendant was asked if she was armed. In response, the defendant informed the Marshals that she had a loaded gun in her pants. This statement, as well as the gun, are admissible at trial. Defendant was not in custody at the time she made this statement and Miranda did not apply

"Miranda was [simply] not meant to apply to investigative questioning that occurs in a noncustodial setting." Ford v. United States, 376 A.2d 439, 441 (D.C. 1977) (citing Oregon v. Mathiason, 429 U.S. 492 (1977); other citations omitted)). Indeed, the Supreme Court repeatedly has "specifically stressed that it was the custodial nature of the interrogation which triggered the necessity for adherence to the specific requirements of its Miranda holding." Beckwith v. United States, 425 U.S. 341, 346 (1976) (internal citations omitted). "A person detained during the execution of a search warrant is normally not in custody for Miranda purposes." United States v. Saadeh, 61 F.3d 510, 520 (7th Cir. 1995). The D.C. Circuit has specifically recognized authority

to the effect that not even handcuffing automatically constitute custody, but is merely one factor to be considered." United States v. Gaston, 357 F.3d 77, 82 (D.C. Cir. 2004) (citing United States v. Leshuk, 65 F.3d 1105, 1109-10 (4th Cir. 1995), United States v. Bautista, 684 F.2d 1286, 1291-92 (9th Cir. 1992)); see also In re E.A.H., 612 A.2d 836, 837-39 (D.C. 1992) (interviews during execution of search warrant were not custodial when occupants of house were interviewed one at a time in separate room with door open).

      Here, the totality of circumstances indicate that defendant Graves was not in custody for Miranda purposes. She was told that the Marshals were there for a fugitive, not her, and she was not under arrest at any time. She also remained in the residence, which is "not the type of coercive setting normally associated with custodial interrogation." See United States v. Sutera, 933 F.2d 641, 647 (8th Cir. 1991). Accordingly, defendant's statements should not be suppressed.

      Furthermore, even if a Miranda violation had occurred, suppression of the gun would not be appropriate. The law in this area is clear. Evidence obtained through a voluntary statement is

admissible even if the statement itself is subject to exclusion under <u>Miranda</u>. <u>United States v. Patane</u>, 542 U. S.630, 636 (2004).

### Conclusion

Defendants motion to suppress physical evidence and statements should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY


GEORGE ELIOPOULOS
ANTHONY SCARPELLI
Assistant United States Attorneys

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 06-21 (RBW) |
| : | |
| INDIA GRAVES, : | |
| Defendant. : | |

**ORDER**

Upon consideration of the defendant's Motion to Suppress Physical Evidence and Statements and the government's opposition thereto, it is, this         day of February, 2008,

ORDERED that the defendant's motion is denied.

_____
REGGIE B. WALTON
United States District Judge

11

12